Good morning. Welcome to the court. Please proceed. Thank you. There's a fundamental deal in obtaining a patent. A patent applicant provides the patent office a full and clear disclosure of the prior art and provides patentable claims over the prior art. In return, the patent office issues a patent. Here, in this case, the patent applicant, Mr. Reuning, provided a very comprehensive disclosure of the prior art and provided claims which the parties all agreed were artified patentable prior art. Is it a real issue whether there was any separate argument about claims 3 to 66? In fact, the board did not specifically address the conclusions of law of claims 3 to 66. However, remember the fundamental principle of law is we have questions of fact and questions of law. Questions of fact, the board has already found, they've already resolved questions of fact adequate to give us unavoidable conclusions of law relating to claims 3 through 66. They addressed those questions of fact in the context of the only claim that we specifically argued that was claim 1. I'm sorry, I didn't hear the question. My understanding is that they addressed the questions of fact only in the context of the only claim you argued, claim 1. In fact, my appeal brief does talk about the other three other claims, however, assuming that the board... It may be not enough that the appeal brief talks about other claims. It seems to me the requirement is that the appeal brief point out that even if my broader claims are rejected, my narrower claims nevertheless are allowable because and then specific reasons have to be given that should be associated with a particular claim. And it seems to me that the appeal brief mentioned the other claims, but it didn't argue separate grounds of patentability on the assumption that the broader claims were properly rejected. Or did it? It did. Where? The board squarely says you didn't. If you say you did, it may be dispositive. We have to figure out whose version of this is more accurate. On the appendix, page A-7 through A-11, we talk about rejections, all rejections based on the loss factor. On appendix A-12 through A-16, we talk about Hartman. On page A-16 through A-17, we talk about Guterria. We talk about all the references, but you don't talk specifically about what limitations or what claims were not shown. Yes, the board has found, for example, the board found in a specific fact finding that contact information data is not shown anymore in the prior art. Now, the claim on the contact information data appears in fully half of the appealed claims. It appears in about 30 of the appealed claims. And so my premise here is if the board makes a factual finding that this one limitation, contact information data, does not exist in the prior art, that is an ineluctable matter of law, that any claim that recites contact information data cannot be obvious or anticipated by the prior art. Is it appropriate for us to be going through this record to figure out which claims contain which limitations that might fall under this argument? When the board didn't address it, the board simply addressed on its own and didn't, and sustained the exam on the rest. I agree with your inquiry that it is, generally speaking, preferable for the board to be laboring more on this and for you as an appeals court to simply review the conclusions of law. Not just preferable, but necessary. We don't review those kinds of questions that haven't been addressed by the board in the first instance. The board has addressed the factual questions, the legal conclusions of law that the board has made. That the applicant has not presented patentability arguments for claims 3 through 66. That, I believe, is patently false based on a review of the brief report of patentables. I assume that's incorrect. It's taken into the record. In your petition for rehearing, however, you didn't make the argument in terms of the petition. You've already made these claims that have taken into the record. The petition for rehearing is only limited to questions of fact and questions of law. One believes that the board has misapprehended. In my petition for rehearing, I wasn't allowed to, in effect, re-litigate the entire case and talk about all 66 claims. I was only allowed to talk about the race. There's issues that I believe the board got wrong. Here, I believe, in fact, the board got 95% of it right. They got the fact findings wonderfully correct. What the board did not seem to get is that it didn't seem to read the appendices that I included with my appeal brief, including the no longer in the affidavit, starting behind Mossberg. That seemed to have gotten past the board somehow. Also, the board seemed to have missed this fundamental concept that if a claim might issue, if it doesn't exist in the prior art, then that means not only that claim 1 is issuable, but any other claim that is— Can I ask you about that just by way of background? Just trying to understand what it is the board did in this very brief opinion. As I read it, so tell me if you read it differently, the board's ultimate conclusion to reverse the exam in the only-obviousness question was based on the fact that they didn't make the prior art as covering the first two limitations, i.e. searching the Internet or identifying the web page of an Internet post. Is that clear to read? Yes. I'm sorry, but there's also a third element there. The idea of locating contact information about it is the identifying said document text during this constituting contact information. That's the third element. But I guess reading your appeal brief, I was a bit confused because in your appeal—in your brief to the board, I thought you conceded that each of these elements was clearly known in the prior art, which I assume searching the Internet was. I mean, I'm a little confused by the board's conclusion that this patent is not obvious because these limitations, like searching the Internet, are not in the prior art. Are they in the prior art or are they not? They're somewhere in the prior art. They're not in the prior art that's been relied on by the examiner and the board in this case. So the board allows these claims to go forward because the particular prior art cited by the examiner did not include searching the Internet. So the board concluded that the patent was not obvious because of this. Is there something that strikes you as odd about that? The thing that appears to strike us as odd is something as fundamental as searching the Internet would not be in the prior art. Well, that struck me as odd, too. Yeah, here, what the examiner did and what the board did is they took the voluminous prior art— there are scores and scores of prior art references here— and they found that some of the prior art teaches Internet searching in general, but they don't teach this kind of, you might call it data mining, of being able to spider the Internet and find specific information that has a specific kind of utility and out of the universe of information in the Internet to be able to pull a certain kind of information out of the Internet and use it in a new way. Now, Mr. Polk, I understand from the conclusion section of your brief exactly what it is you want. You want us to order the claims issued. And, of course, if we're persuaded by your notion that the fact-finding would require issuance of Claims 3266, then presumably you'll get that relief. But assume for the moment that we're not persuaded and you're not going to get that kind of relief. Then we have in front of us the renewed motion to remand by the solicitors. Now, why isn't that an appropriate disposition of the present appeal, since we have no explanation by the board of what they made of Claims 3266 at all? We have a procedural excuse given for not analyzing those claims. So if we conclude that you adequately raised, even if inferentially, separate patentability of Claims 3266, why isn't the logical, appropriate, better resolution here to vacate the board decision and in accordance with the request of the solicitor simply remand the whole matter back to the board to address Claims 3266? If we agree that the board has made factually bindings, that, for example, that the idea of identifying contact information doesn't appear in the problem. I'm asking you to assume we don't agree with that assertion that you've made. Yes. And, therefore, we're not, I assume, going to just order the claims allowed. Then, in that scenario, why isn't the right answer to send this back to the board? If you believe that there are questions of fact, then, yes, you should remand the board. All right. Do you want to say your rebuttal time remains?  Are we almost rolling? All right. Thank you. Welcome to the court. Good morning. Good morning. May it please the court. The most efficient thing for this court to do today is to remand this case back to the board so that the board can make findings with respect to Claims 3266, at least with respect to those rejections which it has sustained. Let me ask you, do we know what happened in this case? I mean, typically, when we get these cases, I guess, I take for granted that everything's wrapped underneath a packet of the above. We have parties who have decided this is the representative claim, and we're just off and running from there. And that aspect of it seems to have fallen apart. Do we know what happened to the body? Yes. What the board found in this case was that Rooney had presented arguments specifically directed to Claim 1, and no arguments passed to any other claim. That's what they found. Based on that finding, they made their decision on procedural grounds. Seeing no arguments directed to Claims 3366, they affirmed for that specific reason. But it seems to me that the parties talked about two different groups of claims. And under Rule 192, 37 CFR 1.192, the claims can be grouped together, and normally that means that the board can look at that and pick a representative claim, and then all the claims in that group stand or fall together. So having found that Claim 1 of at least one of the two groups in question, I don't know why didn't that carry with it all the other claims, even though they were not separately argued, which is what I think we're going to need to contemplate. Well, if an appellate chooses to argue a grouping of claims, then certainly the board can choose a representative claim on its own for the purposes of assessing the attack on those groups of claims. Here the board found that, in fact, Rooney had not even argued a grouping of claims. He had specifically argued Claim 1 individually and had presented no arguments as to any group. And it was based on that finding, the finding as to what was specifically argued in the brief before the board, that the board chose not to then go and select a representative. How did they possibly reach that conclusion? When you look at the brief, it has all sorts of different groupings and has all sorts of different arguments. It doesn't fall under the terms of Claim 1. How could the board possibly have missed it? Well, Your Honor, the board brief does say that Claim 1 defines the invention. It says that the claims… I'm talking about the brief of the applicant. Before the board. Yes. Yes, as in mine. Okay. At page A5 of the record, Rooney presented his invention to the board, and at Section 5.2 of his board brief, he writes how the claims describe the invention, and then he quotes Claim 1. That's it. But on page 7, it talks about grouping of claims. It says the applicant does not object to the examiner's grouping of separately patentable claims. Well, at that point, Your Honor, the examiner had not written the examiner's answer. The examiner had a number of confusing claims. It is the appellant's view. In due course, the examiner did just that. Go to page A33, I guess. A33 talks about the two groupings of claims. Two groupings of claims. Thus, this is the patent office. Thus, the rejection of Group 1 based on independent Claim 1, et cetera, will stand up altogether. Yes, Your Honor, and I believe what the examiner was speaking about at that point in the examiner's answer was the two different prior art rejections, the two one-over-three rejections, one over Group 1 and one over Group 2. In other words, I believe what the examiner was saying is these two different prior art rejections are going to stand or fall together. So you're saying, I guess, that while Rule 1.192 allows the patent office to select a single claim from a group and consider that claim and assess the patentability of all the claims in that group, it doesn't mean that the patent office is required to rule on all of those claims if the patent office considers that there haven't been arguments presented. Yes, if there are no arguments presented for a group of claims generally and all the arguments are confined to only one claim, then the board has no obligation to go and select a claim and imagine what arguments would have – could be extrapolated from the arguments that were presented as to claim 1. The problem here is that this record is so muddy that it's hard to discern what was going on. Yes. It's hard to discern whether the applicant was just arguing claim 1 or whether claim 1 was a representative claim or whether the applicant was arguing broadly with respect to all references as applied to all possible claims, etc. And one would normally expect that the patent office would have come back and said, well, let's get some clarity here or at least let's discuss what it is we think you're arguing so we can rule on that. And it may be because the board thought it was doable. Well, we – In a very personal – We agree, Your Honor, that there is some murkiness as to what the board rate was actually arguing and whether or not it actually may have contained arguments directed to the title and title. And that is why we contacted her name very early in this process, before this appeal was even documented at this point, and offered the option, an extremely unusual option, of returning to the board so the board could withdraw its initial opinion and issue a new opinion that would provide a sound basis for this court's review of the merits of any sustained objection. That's what I think is the most efficient option in this case, and that's what I think this court should do today. Mr. Kelly, I'm still trying to figure out how the board could have apparently misperceived what the issues were. If you look at the appeal brief filed by the applicant, at page 4 of the appeal brief, paragraph number 6, there's a heading, The Issues Presented, and there are three sentences that have three different groupings of claims involving various prior art references. I don't see how anybody reading that could possibly conclude that Mr. Poole was only arguing about Claim 1. He names all these other claims, and he does groupings of the other claims. And yet the board, in its opinion, says he didn't make any arguments with regard to any claim other than Claim 1. Well, Your Honor, in defense of the board, I would say that merely saying that there are some issues presented and listing out the claims which, as of actual matter, have been rejected, merely stating that in the Issues Presented section of the brief does not amount to a detailed argument as to why any one of those claims, aside from Claim 1, is patentable with prior art references. Instead, he specifically talks about Claim 1, and he specifically refers to— that he has to have a separate argument for every one of 63 claims. And that just doesn't sound reasonable. Well, that would not be reasonable, Your Honor. But what he has to have is he has to have some sort of arguments that are not narrowly focused on Claim 1 and that are directed to the entire group of claims. And let me speak to that just for a minute, because although he has repeatedly said that the board made certain factual findings that can be extrapolated to all the other claims, the board did not do so. The board's decision— Well, let's not go off on that. Okay. I'm trying to understand how the board could have thought that he was willing to have all 66 claims stand or fall based on the determination with respect only to Claim 1 and 2, the patent Claim 2. I'm not sure why he would have argued his case that way either. Certainly, he has presented to this court detailed groupings, three sets of groupings, which he never presented to the board before. He's repeated the chart throughout his blue brief, where he tracks claim limitations to certain sets of claims. That's the very type of argument that should be made before the board. If he argues— The examiner in this case certainly read his brief and has argued all the claims. This examiner's answer, in careful detail—I'm looking at page 834 through 843—addresses each claim, one by one by one, going through point by point. Obviously, the examiner thought that the applicant had raised questions with regard to all of these claims. The examiner took the time to go through and carefully respond to each one. Well, the examiner, as is customary practice, repeated the rejection of the record, all of the rejections. And so what the court will see up to response to arguments is a repeat of the final rejection. But again, what the examiner considered ruining to have done in his board brief is not really the issue that confronted the board. The board saw a brief directed solely to claim one and decided the case that way. Now, if that was not the best way of doing it, the board has now offered to withdraw its original opinion and to issue a new opinion with a decision on the merits that this court could agree to. Okay, just following up on Judge Minn's question, on 833, it seems that the examiner says, okay, I don't really agree necessarily with what the patentee has said in paragraph 6, so here's the way I view it. And the examiner says the rejection of group one based on independent claim one, group one, so he sort of says they'll stand or fall together. So he puts claim one under everything under group one and claim 26 under everything under group two. Right? Yes. But the board – what you're saying is that the board didn't follow that? I'm saying that the board followed his briefing to it and that what the examiner was doing here was saying that these two rejections stand or fall together. They're rejections themselves. But what the examiner was also doing was correcting something that really happened in his board brief, which was to argue that there were actually three rejections and the examiner was attempting to correct that. There certainly is – there certainly are statements in the record to suggest that there may have been arguments that could be extrapolated out to the other claims. That's the very reason that the board would like to take the case back. What? Did we talk about the same three board members? Your Honor, the original opinion had a different panel than the reconsideration opinion, and the board members are determined by the chief judge of the court, and I cannot recommend this court to the board members who would be on his behalf. But I wasn't worried about the third composition. I'm just trying to understand who it is who wants to take it back. Is this the board as all 60 people or the director or the chairman of the board or is it the trio who issued the reconsideration decision or who? I'm not sure how – the board is an independent body from the solicitor's office. I can't say how the board reached its decision. I can tell you that the conversation that the solicitor's office had with the board was with the board's chief judge. Well, did you suggest that it be taken back, and they agreed, or did they initiate the suggestion? This is not relevant to the outcome. This is a matter of understanding what happened. As our office does in every case we look the file over, we determine that it might be something to talk to the board about for the simple reason that the only issue before the court today is the procedural affirmance. If that were to get reversed, we would simply be up here again on the Merister case when a new rejection is made. And for that reason, we thought for a judicial economy, the best thing to do would be to take it back then to move the case along and to get to the Meristers. And your reading of the underlying board decision is the same as we discussed with the patentee, which was that the board said that the claims at least that it granted were not obvious because certainly the internet is not the priority. No. We don't agree with the appellant's view of what the board said. The board was confining its analysis to claim one. What the board said was in this resume collection and searching process that the manner of getting the resumes, that searching the internet, looking for specific resumes for things that could be resumes, and then pulling them in as opposed to just having the resumes handed to them, that that process of searching for them automatically, that that was not in the Mossberg Wall Street Journal article. That's what the board said. Mr. Kelly, am I right that the history of this case in terms of chronology is that the application was filed in 2000? No, Your Honor. That's not correct. I think this application was filed in 2001, July. It was filed as an incomplete application and received an office action in September 2002, about a year later, which is not particularly slow. So far, it sounds pretty good, but the trouble is it's now 2008, and we don't even have a final reviewable board decision. It just seems like a horribly inefficient, slow process, at least to me. It took the board over two years to decide this case in the first instance. It seemed to be trying to figure out the time frame that the briefs were filed in mid-2004 and the board's initial decision not to rehear it was issued in November 2006. So I think we lost almost two and a half years there, right? Yes, it did take two years to reach that decision, and unfortunately, I don't think that's the unusual in this technology area. And then with the rehearing request, there was another nine months or so of delay, and even then we don't have a reviewable decision, at least in my view. So there are an awful lot of time that's run by here, and we still don't have anything we can work with. Well, and there was time in the prosecution that was slowed down by the applicants. At one point, the applicants would go over a year to file a proper response to a proper sanctioning clearance. Well, I'm particularly concerned about the board. It may be that the relatively fast examination could have been much faster. Mr. Pohl had done certain things, as you suggest, but overall, the examination time doesn't look out of line. The appeal delays look troublesome, at least to me. Well, Your Honor, in this technology sector, in the business method area, we have a lot of appeals, and the office is doing the best it can as quickly as can. And all I can say is in this case, what would be most efficient now is to demand this case to the board so that they can provide the court an opinion on the merits of the appeal. Now, you said something earlier about how the original idea was for the appeal to be remanded. But now that initial motion suggestion was rejected by Mr. Pohl, and then you filed a motion, and the motion was rejected, I guess, by Judge Guyarza. And so we have this renewed motion in front of us. But it seems to me at this point it's questionable whether we can just give it back. It seems to me we would probably have to vacate the board decision and then remand the matter back to us. Would you agree with that? I agree that if the case goes submitted, that I would make you have to vacate it. You would not be granting our motion if you take the case under consideration, which I think is what you're asking. Well, I think we kind of have to at this point. I may be wrong about that. I'll concur with my colleagues. But it seems to me having gone this far down the line to have a full briefing and a full record supply, oral argument that at this point the case should be being submitted. And if we agree with you that we should then vacate the board decision and remand the case back to the board. I would have the same effect with the board revisions. All right. Thank you. Mr. Paul, you now have just under four minutes for rebuttal. Thank you, Your Honour. I have a few quick points. First, for the group of claims, the examiner in the final office action had three groups of claims. He then went to two groups of claims, and his examiner's answer, the solicitor is now arguing two groups of claims, albeit a different two groups than the examiner argued. I really don't care what the group of claims is. I'm willing to argue any group of claims as long as I know what it is. And similarly to that, I do believe that trying to argue all 66 claims individually is going to create a monstrous victory. The board has already shown that they're overworked, understaffed, and perhaps – Well, Mr. Howell, you seem to clearly agree that all 66 claims don't need to be individually argued. But I thought you suggested that some clear delineation needs to be made so that the board can see what arguments can be made with respect to a given claim or group of claims that would make them allowable even if broader claims are disallowable. Here, is it not clear how specific you mean to be? Well, that's the problem. If the examiner's answer says they have one group of claims including claim one, two, et cetera, et cetera, if I argue claim one, the board says claim one is allowable, my assumption is that takes the whole group with it. If you've got a really nice broad claim, one is allowable, I don't think the board would quibble with it depending on claim 42 or 44 being unallowable. And once they've agreed to allow a big broad claim in that group, my sense is – Yeah, but we have the flip of that here. The assumption you should make is the broad claim is not going to be allowed, but if there are separate and convincing arguments as to some number of narrow claims, they might be allowed. That's true, that if the broad claim were not allowed here, the board would allow claim one, too. So maybe that makes this sort of a fluke. It's not going to be the typical case. The typical case is where they disallow the broad claim and then there's an issue about some narrow claim. Yeah, but the problem I see is that in your brief, you didn't make it clear that you were arguing claim one as representative of all of the claims in that group and you were willing to stand or fall on the patentability of that claim. Likewise, the patent office, when it responded and addressed the grouping of claims, similarly didn't say except in a sort of summary fashion that, well, at least I can stand or fall together. And then when the board finally got around to addressing this, the board's decision didn't address the grouping at all. Right, right. So it's the blind leading the blind into a dead end. And my fear, my emotional fear about getting a remand is that I've had to file four appeal rates to get this appeal heard. I had to come here and ask this court for a written mandamus to force the board to hear the appeal in the first place. You mean to decide it? To decide it, yes. They decided in a less than thorough fashion. I asked for reconsideration and the reconsideration, I feel like, was not the most thorough work the board really could do. And I am frankly terrified that if you send me back to the board, Steve Ray is going to, he's going to die before he ever sees his patent. This is going to go on forever. Well, I think we have some assurances from Mr. Walsh and Mr. Kelly that the matter won't proceed expeditiously to return to the board and perhaps even in front of a different set of judges. So I don't think we can make a lot of assumptions about what might happen on remand if there is a remand that is so negative and pessimistic. I think if we make any guesses, my guess would be it would be quite the other way around. It would be very careful and very expeditious. And that would be great. Maybe we'll all meet again yet on this case. I think we have your position and the office's position. So we're going to take the case on the divide and thank both of you for coming. Thank you very much. All rise.